IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN GREENBERG | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 14-4796 |
| CAESARS ENTERTAINMENT | : | |
| CORP., ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                              **MARCH  21 , 2016**

Presently before the Court is the Commonwealth Defendants' Motion for Summary

Judgment (ECF No. 42), and the Motion for Summary Judgment by Defendant Chester Downs

and Marina, LLC d/b/a Harrah's Philadelphia (ECF No. 43).  For the following reasons, the

Commonwealth Defendants' Motion will be granted, and Harrah's Motion will be granted.

**I.      BACKGROUND**

This is a civil action against Pennsylvania State Police Officers and Harrah's casino for

an incident that occurred in December 2012.  Plaintiff alleges civil rights violations, and other

causes of action, after he was accused of being overpaid $100 by Harrah's when cashing in poker

chips, and was threatened with arrest if he did not return the overpayment.

**A.      Factual Background**[1]

On December 5, 2012, Plaintiff Alan Greenberg was playing poker at Defendant Caesars

Entertainment Corp. d/b/a Harrah's Casino ("Harrah's").  (Pl.'s Dep. 28, 68-69, Joint App. Ex. 1,

ECF No. 41.)  He had been playing for about five hours and left at around midnight.  (Pl.'s Dep.

---

[1] We view of all of the facts and draw all reasonable inferences therefrom in the light
most favorable to Plaintiff, the non-moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848,
852 (3d Cir. 2006).

19.)  Before leaving, Plaintiff exchanged poker chips for cash.  (*Id.* at 29, 30; *see also* Surveillance Video, Joint App. Ex. 5.)  Plaintiff redeemed poker chips worth $300, but was paid four (4) $100 bills by a Harrah's teller.  (Surveillance Video; Harrah's Incident Reports, Joint App. Ex. 6; Harrah's Statement of Facts ¶ 4; Pl.'s Resp. to Harrah's Stmt. of Facts ¶ 4.)  The transaction was recorded on video surveillance.  (*See* Surveillance Video.)  The surveillance tape shows Plaintiff wearing a maroon t-shirt, standing at the cashier window, and completing the transaction.  (*Id.*)

Plaintiff returned to Harrah's the following day, December 6, 2012, to play poker.  (Pl.'s Dep. 18.)  At around 6:30 p.m. on the evening of December 6, Harrah's security guard Nikiya Donatelli ("Donatelli") approached Plaintiff at the poker table and asked to speak with him.  (*Id.* at 18-19.)[2]  Donatelli asked Plaintiff if he had been to Harrah's on the previous evening, to which Plaintiff responded that he had.  (Pl.'s Dep. 19.)  Donatelli then asked whether Plaintiff recalled the cashier overpaying him by $100.  (*Id.*)  Plaintiff responded, "absolutely not."  (*Id.*)  Donatelli informed Plaintiff that Harrah's recorded the transaction on video surveillance.  (*Id.*)  Plaintiff responded that he would have no problem making restitution to Harrah's if he was in fact overpaid, but did not believe that he was.  (*Id.* at 19-20.)  When Plaintiff requested to see the surveillance tape, Donatelli responded that he would need a subpoena to review it.  (*Id.* at 20.)  Donatelli then stated:  "I'm going to ask you one more time.  Are you going to pay the casino the $100.00 you owe them?"  (*Id.*)  Plaintiff responded, "what if I don't believe I owe the casino money?"  (*Id.*)  Donatelli responded that she would return with the Pennsylvania State Police to have Plaintiff arrested.  (*Id.*)  Donatelli warned Plaintiff to stay right there, and then walked

---

[2] Nikiya Donatelli was known as Nikiya Orem at the time of the incident.  (Donatelli Dep. 6, Joint App. Ex. 4.)  We refer to her by her married name, Donatelli.  Donatelli has little to no recollection of the incident that serves as the basis for this action.  (*See generally* Donatelli Dep.)

away.  (*Id*.)  Plaintiff's conversation with Donatelli took place approximately ten feet away from the poker table, and lasted approximately two to three minutes.  (*Id*. at 21, 24.)   Plaintiff returned to the poker table.  (*Id*. at 22.)  Plaintiff was certain that he was not overpaid.  (*Id*. at 20.)

Approximately twenty minutes later, Corporal Michael Gaines and Trooper William Shores arrived on the Casino floor.  (Pl.'s Dep. 35.)  Gaines and Shores were assigned to the Pennsylvania State Police Bureau of Gaming Enforcement, and assigned to Harrah's.  (Gaines Dep. 50, Joint App. Ex. 2; Shores Dep. 7, Joint App. Ex. 3.)  The Pennsylvania State Police maintains an office within the Harrah's casino.  (Gaines Dep. 50.)  Prior to approaching Plaintiff, Gaines had been contacted by someone in the surveillance department, who reported that an individual in the Harrah's poker room had been overpaid $100, and that he refused the return the money to security personnel who had requested reimbursement.  (Gaines Dep. 17.)  Gaines confirmed with the Harrah's surveillance employee that surveillance footage revealed the overpayment, and that Harrah's wished to pursue charges.  (*Id*. at 17-18, 50-51.)

On the casino floor, in the poker room area, Gaines and Shores spoke with Donatelli. (Gaines Dep. 18, 52.)  Donatelli identified Plaintiff, and explained that he had been overpaid $100 the previous day.  (*Id*. at 18.)  Donatelli also informed Gaines and Shores that she had requested that Plaintiff return the $100, but that he refused.  (*Id*. at 18, 36-37.)  Plaintiff noticed Gaines and Shores standing approximately 25 feet away from his poker table, looking in his direction.  (Pl.'s Dep. 35.)  Plaintiff looked at the officers and pointed to himself.  (*Id*.)  Shores nodded yes, which Plaintiff understood to mean they wanted to speak with him.  (*Id*. at 36.)

Plaintiff left the poker table and walked towards the officers.  (*Id*.)  Gaines and Shores identified themselves as Pennsylvania State Police.  (*Id*. at 36-37.)  Shores displayed his police

badge.  (*Id*.)  One of the officers stated that they were informed that Plaintiff had been overpaid

$100, and that he had to pay the money back or else get arrested.  (*Id*. at 38, 41.)  Plaintiff asked

the officers why he would be arrested, and the officers responded "theft by overpayment."  (*Id*. at

41.)  The police advised Plaintiff that he had ten seconds to make a decision:  either he could pay

or go to jail.  (*Id*.)  Plaintiff requested to see the surveillance tape multiple times.  (Gaines Dep.

20; Shores Dep. 11 ("He kept insisting on seeing the video.").)  The officers responded that he

would have to take that up with Harrah's.  (*Id*.)  When Plaintiff asked the officers whether they

had seen the surveillance tape, one of the police officers stated, "turn around," which Plaintiff

understood to mean that he would be handcuffed.  (Pl.'s Dep. 41.)  Plaintiff looked at Donatelli,

who was seated at a vacant poker table about 10 to 15 feet away, threw his hands up in the air,

and stated that he would pay the money.  (*Id*. at 41-42.)  Plaintiff gave Dontatelli $100 worth of

poker chips.  (*Id*.)  Plaintiff was embarrassed and humiliated.  (Pl.'s Dep. 70.)  Plaintiff had no

further contact with Gaines or Shores.  (*Id*.)  He continued to play poker for about five minutes,

and then left the casino.  (*Id*. at 45-46.)  Plaintiff's conversation with the officers lasted

approximately two-and-a-half minutes.  (*Id*. at 42.)  Plaintiff was not free to leave during that

conversation.  (Gaines Dep. 21; Shores Dep. 12-13.)

Both Gaines and Shores testified that they did not threaten Plaintiff with arrest, but that

Plaintiff would have been arrested had he not returned the money.  (Gaines Dep. 23-24; Shores

Dep. 12-13.)  Neither Gaines nor Shores reviewed the video surveillance before approaching

Plaintiff.  (Gaines Dep. 18-19; Shores Dep. 14.)  Gaines states that he did not review the video

because he confirmed it with someone in the surveillance department.  (Gaines Dep. 25.)  Gaines

stated that it is somewhat of a "normal procedure" to not review the surveillance, but instead

"take it on [Harrah's] word" that they have accurate footage of patrons being overpaid.  (*Id*.)

The police officers "completely relied on Harrah's to establish probable cause." (*Id*. at 2-26.) Gaines has gotten involved in accidental overpayments "numerous times," and approximates close to ten times. (*Id*. at 31.)[3] Shores has been involved with overpayments "several times." (Shores Dep. 13.) Shores stated that when he gets involved in overpayments, he "sometimes" reviews the surveillance footage before approaching the patron, but not always. (*Id*. at 21.) Gaines does not recall a time when a patron refused to pay the money. (Gaines Dep. 31.)

### B.    Procedural History

Plaintiff commenced this action with a Complaint filed on August 15, 2014. (ECF No. 1.) The First Amended Complaint was filed on October 28, 2014, and asserts the following causes of action:  due process violations under the Fourth and Fourteenth Amendments, and state law (Count I); a claim under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), against Harrah's (Count II); violations of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. § 2270.1 *et seq*., (Count III); conspiracy, aiding and abetting, and acting in concert (Count IV); false arrest under 42 U.S.C. § 1983 and under state law (Count V); and wrongful seizure under Section 1983 and under state law (Count VI).  On November 13, 2014, Defendants, Corporal Gaines and Trooper Shores (the "Commonwealth Defendants") filed a motion to dismiss. (ECF No. 14.) Defendant Harrah's did not move to dismiss any claims in the Amended Complaint, but instead filed an Answer on November 24, 2014. (ECF No. 17.)

On February 2, 2015, a Memorandum and Order were entered granting in part and denying in part the Commonwealth Defendants' motion to dismiss. (ECF Nos. 23, 24.) Plaintiff's claim for substantive due process, claim under FCEUA, and civil conspiracy claim were dismissed against the Commonwealth Defendants. (*Id*.)  Thereafter, Plaintiff filed a motion

---

[3] When getting involved, Gaines sometimes tells patrons that they will be arrested if they don't repay the money. (Gaines Dep. 32.)

to reconsider the February 2 Order. (ECF No. 25.)  On May 5, 2015, a Memorandum and Order were entered denying Plaintiff's motion to reconsider.  (ECF Nos. 28, 29.)

On January 4, 2016, the Commonwealth Defendants filed their Motion for Summary Judgment.  (Commw. Def.'s Mot., ECF No. 42.)  That same day, Harrah's filed its Motion for Summary Judgment.  (Harrah's Mot., ECF No. 43.)  The Commonwealth Defendants and Harrah's submitted a Joint Appendix for Summary Judgment.  (Joint App., ECF No. 41.)  On February 4, 2016, Plaintiff filed a Response (Pl.'s Resp., ECF No. 45) in opposition to Defendants' Motions for Summary Judgment, which includes:  (1) a Memorandum of Law; (2) a response in opposition to Harrah's statement of material facts; (3) a response in opposition to the Commonwealth Defendants' statement of material facts; and (4) Plaintiff's statement of material facts (Pl.'s Stmt. of Facts, ECF No. 45).  On February 11, 2016, Harrah's filed a Reply. (Harrah's Reply, ECF No. 46.)  On February 23, 2016, Plaintiff filed a Sur-Reply.  (Pl.'s Sur-Reply, ECF No. 48.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id.*  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for

summary judgment.  *Schaar v. Lehigh Valley Health Servs., Inc*., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 461 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co*., 391 F.3d 497, 502 (3d Cir. 2004).  If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## III.    DISCUSSION

### A.    Plaintiff's Claims against the Commonwealth Defendants

The Commonwealth Defendants seek summary judgment on the remaining two claims asserted against them:  (1) the substantive due process claim under the Fourteenth Amendment, and (2) the wrongful seizure claim.  They contend that the evidence of record fails to establish the elements of the claims, and that the doctrine of qualified immunity requires summary judgment in their favor.

*1.      Procedural Due Process Under the Fourteenth Amendment*

Plaintiff claims that the Commonwealth Defendants deprived him of his property—the $100—without due process of law.  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV s. 1.  To establish a claim under the due process clause, Plaintiff must show that he had a protected liberty or property interest in which he has been deprived, and that the process afforded him did not provide "due process of law."  *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (citation and internal quotation marks omitted).

Plaintiff does not dispute that Harrah's overpaid him and that the $100 did not belong to him.[4]  Therefore, Plaintiff cannot show that he was deprived of his property.  Even if Plaintiff had not been overpaid, his procedural due process claim would nevertheless fail.  The Commonwealth Defendants contend that summary judgment is appropriate because Plaintiff failed to take advantage of the processes that were available to him.  Specifically, they assert that Plaintiff could have brought a tort claim against Harrah's for the return of the $100 in its possession.  Plaintiff did not take advantage of this post-deprivation remedy.

To establish a procedural due process claim, "a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate."  *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000); *see also Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) ("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process

---

[4] In his response to the Commonwealth Defendants' statement of material facts, Plaintiff admits that a review of the surveillance tape confirmed that Plaintiff was overpaid by $100.00. (*See* Commw. Defs.' Stmt. of Material Facts ¶ 43; Pl.'s Resp. to Commw. Defs.' Stmt. of Material Facts ¶ 43; *see also* Harrah's Stmt. of Material Facts ¶ 13; Pl.'s Resp. to Harrah's Stmt. of Material Facts ¶ 13 (admitting that "[t]he video shows an overpayment mistake by Harrah's").)

Clause if a meaningful postdeprivation remedy for the loss is available.") (citation and internal quotation marks omitted).  The Supreme Court has recognized that state law tort claims provide an adequate process to remedy a plaintiff's deprivation of property.  *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Willard v. Pa. SPCA*, 525 F. App'x 217, 221 (3d Cir. 2013).  The Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property by state officials.  *Shakur*, 421 F. App'x at 135.  "Although state officials are generally immune from liability for acts committed within the scope of their duties, this immunity does not apply when . . . the alleged misconduct was willful."  *Id*. (citing 42 Pa. Cons. Stat. § 8550).  Plaintiff alleges that Defendants' acts of coercing Plaintiff to return the $100 was willful.   (*See* Compl. ¶ 23 (stating that Defendants' "willful, reckless and malicious actions were made in an effort to deprive Plaintiff of his rights to due process . . . ." ).)  Plaintiff therefore had state tort remedies against Harrah's and the Commonwealth Defendants.  Accordingly, Plaintiff's procedural due process claim will be denied.

> ## 2. *Wrongful Seizure Under the Fourth Amendment (Count VI)*

The Commonwealth Defendants argue that the facts do not support a wrongful seizure because the detention of Plaintiff was for a brief two-and-a-half minute conversation and it involved no force or impediment to his movement.[5]  The Commonwealth Defendants further

---

[5] Plaintiff also asserts a false arrest claim in Count V of the Amended Complaint.  In our February 2 Memorandum, we declined to dismiss Plaintiff's false arrest claim because, although there was not a formal arrest in this case, we noted that Plaintiff "may prevail on a false arrest claim to the extent that the facts establish 'a restraint on freedom of movement of the degree associated with a formal arrest.'"  *Greenberg v. Caesars Entm't Corp.*, No. 14-4796, 2015 U.S. Dist. LEXIS 12350, at *9 (E.D. Pa. Feb. 2, 2015) (quoting *Colbert v. Angstadt*, 169 F. Supp. 2d 352, 359 (E.D. Pa. 2001)).  In both his false arrest claim and wrongful seizure claim, Plaintiff contends that when he was threatened with arrest during his conversation with Gaines and Shores, his right to be free from unreasonable seizures was violated.  We will therefore analyze

argue that even if a seizure of Plaintiff did occur, it was not unreasonable under the circumstances because the officers had probable cause to believe that Plaintiff had committed a theft.  Plaintiff responds that the Commonwealth Defendants are liable for an unlawful seizure of property—the $100 overpayment.  As discussed above, Plaintiff has failed to show a deprivation of his property rights without due process of law.  *See Supra* Section III.A.1.  Plaintiff does not argue that the Commonwealth Defendants committed an unlawful seizure of his person.  However, even if he had, Plaintiff's claim would fail.  Plaintiff has not set forth sufficient evidence establishing a Fourth Amendment violation.[6]

To establish a claim for wrongful or unlawful seizure, Plaintiff must show (1) that a "seizure" occurred and (2) that the seizure was unreasonable.  *United States v. Smith*, 575 F.3d 308, 313 (3d Cir. 2009).  Factors that weigh in favor of finding a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that

---

both claims as an unlawful seizure claim.  However, even if we evaluated the false arrest claim separately, we would reach the same conclusion.  Plaintiff's brief conversation with Gaines and Shores did not rise to the level of "restraint on freedom of movement of the degree associated with formal arrest."  *Colbert*, 169 F. Supp. 2d at 359 (citation and internal quotation marks omitted) (finding no restraint of movement of degree associated with formal arrest when the plaintiff briefly spoke to the officer and later received a summons by mail).

[6] Plaintiff also raises an argument that the Pennsylvania State Police Officers' involvement is actionable under Section 1983 because they took an active role in "repossession" of the $100 as opposed to remaining neutral.  (Pl.'s Resp. 17.)  Plaintiff relies on *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606 (3d Cir. 2011).  In *Harvey*, the plaintiff brought a Section 1983 case against a police officer who was at the scene of a repossession of personal property "serving to maintain the peace."  *Id*. at 607-08.  The court in *Harvey* addressed the standard applied for determining whether a police officer's presence at a private repossession—a civil dispute—amounted to state action for purposes of Section 1983.  *Harvey* is inapposite.  In Plaintiff's case, the Pennsylvania State Police got involved because there was probable cause to believe that Plaintiff had committed a crime.  They did not get involved to settle a civil dispute.  Indeed, Gaines testified that if Harrah's did not wish to pursue criminal charges against Plaintiff, then the Pennsylvania State Police would not have gotten involved.  (Gaines Dep. 61-62.)

compliance with the officer's request might be compelled.'" *Id.* (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  In addition, a seizure can occur when a plaintiff submits to authority.  "The simple act of an assertion of authority by an officer is insufficient to transform an encounter into a seizure without actual submission on the part of the person allegedly seized." *Id*.  Determining whether the assertion of authority constitutes a seizure requires an objective analysis.  It is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Cal. v. Hodari D.*, 499 U.S. 621, 628 (1991).

Viewing the record in its entirety, and resolving all disputes in Plaintiff's favor, we are satisfied that Plaintiff has provided sufficient evidence to demonstrate that he was seized by Gaines and Shores.  Plaintiff states that he was threatened with arrest if he did not repay the $100.  When Plaintiff inquired about reviewing the surveillance video, one of the officers ordered Plaintiff to turn around, which Plaintiff understood to mean that he was about to get handcuffed.  Gaines and Shores both testified that Plaintiff was not free to leave during the encounter.  Although the officers did not display a weapon or use physical force, their language and tone gave the impression that Plaintiff was not free to leave the conversation.  The evidence shows that Plaintiff submitted to their authority.  Ultimately, Plaintiff relented and agreed to pay the $100.

Having determined that Plaintiff was seized, we must determine whether that seizure was reasonable.  The Commonwealth Defendants contend that they had probable cause to arrest Defendant for theft.  Specifically, the officers believed that Plaintiff was guilty of 18 Pa. Con. Stat. Ann. § 3924, entitled "Theft of Property Lost, Mislaid, or Delivered by Mistake."  Section 3924 provides:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with the intent to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to have it.

18 Pa. Con. Stat. § 3924.  Although considered a misdemeanor generally, *see* 18 Pa. Con. Stat. § 3903, police officers are permitted to arrest individuals on suspicion of violating this theft statute without first obtaining a warrant, if based upon probable cause, *see* 18 Pa. Con. Stat. § 3904. Therefore, the relevant inquiry is whether Gaines and Shores could have reasonably believed that Plaintiff had come into control of property—the $100—that he had reason to believe had been delivered under mistake, and failed to take reasonable measures to return the property.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (citation and internal quotation marks omitted).  Courts look to the totality of the circumstances in determining whether probable cause exists. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

The evidence reveals that prior to detaining Plaintiff, Gaines and Shores were informed by employees in both the surveillance and the security departments of Harrah's that Plaintiff had been overpaid $100, and refused to make reimbursement.  Gaines confirmed with the surveillance department that the overpayment was recorded on video, and that Harrah's wished to pursue charges.  Gaines and Shores also spoke to Donatelli, who identified Plaintiff, and described her encounter with Plaintiff, during which Plaintiff refused to return the $100. Plaintiff does not dispute that he was overpaid $100 by Harrah's.  Based upon the totality of the

evidence, a reasonable jury could not find that Gaines and Shores lacked probable cause to arrest Plaintiff for Theft of Property Lost, Mislaid, or Delivered by Mistake.

Plaintiff contends that the officers lacked probable cause because their determination was based entirely on the statements of Harrah's personnel, highlighting the fact that the officers failed to personally review the surveillance video before approaching Plaintiff.   However, it is well-established that police officers are "not required to undertake an exhaustive investigation in order to validate the probable cause that, in [their] mind, already existed." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000).   The officers had received credible information from at least two Harrah's employees that Plaintiff had been overpaid.   This was sufficient.   *See id.* at 790 (finding that a police officer had probable cause where the officer "possessed [the] knowledge of a credible report from a credible eyewitness").

Plaintiff also contends that the officers lacked probable cause because an essential element of the theft charge was absent—intent to deprive.   Plaintiff argues that the fact that he repeatedly requested to review the surveillance video reveals that he lacked the requisite intent to be guilty of theft under 18 Pa. Con. Stat. § 3924.   Plaintiff's argument is untenable for several reasons.   First, definitive proof of guilt and probable cause to arrest are separate standards. Probable cause to arrest "does not 'require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'"   *Reedy*, 615 F.3d at 211 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).   The police officers had credible evidence that Plaintiff had been overpaid.   He refused to give the money back.   The fact that Plaintiff requested to see the surveillance video does not undermine their probable cause determination.   *See United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009) ("A self-serving denial, on its own, does not defeat probable cause.").   Second, although Plaintiff may not have realized that he was

13

overpaid when the cage attendant exchanged $100 dollar bills for his chips, he later became aware of the fact during his discussion with Donatelli, who informed Plaintiff that Harrah's had surveillance video proving the overpayment.  At that moment, Plaintiff was put on notice of the overpayment, and formed the requisite intent to deprive upon refusing to pay the money back.

### B.      Plaintiff's Claims against Harrah's

Harrah's seeks summary judgment on all claims asserted against it by Plaintiff. Specifically, Harrah's seeks judgment on the following claims:  the Federal claims asserted under Section 1983 (Counts I and II); the FCEUA claim  (Count III); the claim for conspiracy/aiding and abetting/acting in concert (Count IV); the false arrest and wrongful seizure claims (Counts V and VI); the claim for and negligence and negligent supervision (Count (VII).

#### 1.      Plaintiff's Federal Claims Under Section 1983

Plaintiff's two federal claims consist of a Section 1983 claim for deprivation of due process, and a *Monell* claim.  The Section 1983 claim asserts that Defendants' actions in threatening Plaintiff with arrest and coercing repayment from him deprived Plaintiff of his rights to due process.  (Am. Compl. ¶¶ 21-23.)  As for the *Monell* claim, Plaintiff alleges that Harrah's conduct "was part of a custom and/or practice" whereby "Defendants act like debt collectors and threaten arrest towards repayment without investigation of amounts purportedly owed."  (*Id.* ¶ 18.)[7]

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and the laws of the United States when that deprivation takes place 'under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.'"  *Lugar v. Edmondson*

---

[7] We presume that, at this stage, Plaintiff is pursuing claims only against Harrah's as the corporate entity.  Although Plaintiff's Amended Complaint names John Does 1-10, Plaintiff has not provided any details about the identity of these John Does.  The only Harrah's employee identified in the record is Donatelli, and she has not been personally named as a Defendant.

*Oil Co.*, 457 U.S. 922, 924 (1982) (quoting 42 U.S.C. § 1983).  To establish a Section 1983

violation, a plaintiff must demonstrate that (1) the defendant deprived the plaintiff of a right

secured by the Constitution or the laws of the United States; and (2) the defendant was acting

under color of state law.  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).  Acting

under color of state law "requires that the defendant . . . [ ] exercised power possessed by virtue

of state law and made possible only because the wrongdoer is clothed with the authority of state

law."  *Boneberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997) (citations and internal

quotations omitted).  Generally, private actors do not act under color of state law, and therefore,

are not liable under Section 1983.  A private actor such as Harrah's may only be liable under

Section 1983 if it "may fairly be said to be a state actor."  *Lugar*, 457 U.S. at 937.

One way a private actor becomes liable under Section 1983 is if it willfully participates in

a joint action or conspiracy with the state actor to deprive the plaintiff of a constitutional right.

*See Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998) ("Although not an agent of the state,

a private party who willfully participates in a joint conspiracy with state officials to deprive a

person of a constitutional right acts under color of state law for purposes of § 1983." (internal

quotation marks omitted)).[8]  Under the joint action test, Plaintiff must point to evidence

establishing that the state officials and private party "acted in concert" or had a "meeting of the

minds" in effectuating a deprivation of Plaintiff's constitutional rights.  *Startzell v. City of*

---

[8] The Third Circuit has identified three tests for determining whether a private party should be deemed a state actor for purposes of Section 1983:  "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)).  Plaintiff pursues his claims against Harrah's under the second test, also known as the "joint action" test.

*Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008).  At summary judgment, this means that Plaintiff

must point to "evidence from which one could infer that [Harrah's] and the [Commonwealth

Defendants] had an understanding or agreement to conspire against [Plaintiff]."  *Id*.  The Third

Circuit has established a two-part-inquiry for determining whether a private party may be

deemed a state actor under the joint action test:  "(1) the private entity has a 'prearranged plan'

with the police officers, and (2) under the plan, the police officers will 'substitute their [own]

judgment' with that of the private entity's."  *Cahill v. Live Nation*, 512 F. App'x 227, 230 (3d

Cir. 2013) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3d Cir. 1984)) (alteration in original).

This inquiry "must be fact specific," and must "take into account the totality of the

circumstances."  *Id.* (internal citations and quotation marks omitted).

 In addition to showing that Harrah's is a state actor, Plaintiff must also demonstrate that

the alleged conspiracy was the result of a Harrah's custom or policy.  It is well established that a

municipality cannot be held liable in a Section 1983 action under a theory of respondeat superior.

*See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Sanford v. Stiles*, 456 F.3d 298,

314 (3d Cir. 2006).  Rather, the plaintiff must show that the municipality itself, through the

implementation of a policy, custom, or practice, caused the constitutional violation.  *Beck v. City

of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996).  The standard for municipal liability in civil

rights actions espoused in *Monell* applies equally to private corporations.  *Victory Outreach Ctr.

v. Melso*, 371 F. Supp. 2d 642, 646 (E.D. Pa. 2004); *Natale v. Camden Cnty. Corr. Facility*, 318

F.3d 575, 583-84 (3d Cir. 2003); *Thomas v. United States Airways*, No. 13-6121, 2014 U.S. Dist.

LEXIS 65455, at *13-14 (E.D. Pa. May 13, 2014).

 Plaintiff's *Monell* claim against Harrah's fails for many reasons.  Most notably, Plaintiff

has failed to present sufficient evidence to support a finding of the existence of a Harrah's policy

or custom that relates to Plaintiff's alleged constitutional violation.  Plaintiff cites three examples

of what he believes to be evidence a Harrah's unconstitutional policy or custom:

> Defendants admitted that they have confronted patrons regarding overpayment
> multiple times at Harrah's.  Gaines has told other people that if they do not repay
> the money, they will be arrested.  Defendants admitted they regularly use their
> authority to settle civil disputes.

(Pl.'s Resp. 14.)  Contrary to Plaintiff's contention, the first two examples simply do not

establish an unconstitutional policy under Section 1983.  The third example is not supported by

the evidence, and therefore we need not address it further.  As to the first two examples, this

evidence does not support a finding of a Harrah's policy.  "Policy is made when a

'decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action' issues an official proclamation, policy, or edict."  *Andrews v. City of Philadelphia*, 895

F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481

(1986)).  The record is devoid of any evidence showing that a Harrah's decision-maker

established a policy whereby police officers housed in the casino confront patrons suspected of

being overpaid and threaten arrest.

The evidence also does not establish that Harrah's had a custom to violate patrons'

constitutional rights.  "Custom . . . can be proven by showing that a given course of conduct,

although not specifically endorsed or authorized by law, is so well-settled and permanent as

virtually to constitute law," *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing

*Andrews*, 895 F.2d at 1480), and "may be established by proof of knowledge and acquiescence,"

*Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).  Although Gaines and Shores stated

that they had approached other patrons about suspected overpayments, there is no evidence that

this was a custom "so well-settled and permanent as virtually to constitute law."  *Bielevicz*, 915

F.2d at 850.  Nor is there any evidence the officers violated the other patrons' constitutional

rights.   Even if we were to assume that Plaintiff's constitutional rights were violated, the evidence of one alleged constitutional violation is not sufficient to establish municipal liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Plaintiff's Section 1983 claims also fail because the evidence does not support a finding that Harrah's participated in a joint action or conspiracy with the Pennsylvania State Police to violate Plaintiff's constitutional rights.   Principally, Plaintiff has not offered sufficient evidence that Harrah's and the Pennsylvania State Police had a pre-arranged plan whereby the police officers would substitute their own judgment for that of Harrah's.   Although Gaines and Shores stated that they had, on other occasions, approached Harrah's patrons to inquire about overpayments, there is no evidence in this record that these encounters violated the patrons' constitutional rights.   Moreover, although Gaines and Shores concede that they relied on Harrah's personnel in establishing probable cause to detain Plaintiff, neither testified that they relied on Harrah's to establish probable cause with respect to approaching all patrons regarding overpayments.   Indeed, Shores testified that sometimes the officers view the surveillance footage before approaching a patron, but opted not to in Plaintiff's case.   The evidence does not show a pre-arranged plan.   Nor does it show a meeting of the minds, or that Harrah's and the Commonwealth Defendants "had an understanding or agreement to conspire against [Plaintiff]." *Starzell*, 533 F.3d at 205.   Based upon the record in its entirety, and viewing the facts in the light most favorable to Plaintiff, a reasonable jury could not find that Harrah's is a state actor under

Section 1983.  Summary judgment will be entered in favor of Harrah's on Plaintiff's Section 1983 Claims.

### 2.   FCEUA Claim

Plaintiff alleges that, in coercing him to repay the $100, "Defendants are 'debt collectors' as defined by 73 [Pa. Cons. Stat.] § 2270.3, attempting to collect a debt as defined by 73 [Pa. Cons. Stat.] § 2270.3."  (Am. Compl. ¶ 19.)  Plaintiff also alleges that "Defendants' conduct violated the FCEUA by conspiring to and contacting Plaintiff without lawful ability to collect. 73 [Pa Cons. Stat.] § 2270.4(b)(5)(viii)."

Section 2270.4(b)(5)(viii) of the FCEUA states as follows:

> *A creditor* may not use any *false, deceptive or misleading representation or means* in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph:
> . . .
> *Communication or threatening to communicate to any person credit information* which is known or which should be known to be false, including the failure to communicate that is debt is disputed.

73 Pa. Cons. Stat. § 2270.4(b)(5)(viii) (emphasis added).

Plaintiff's claim is frivolous.  Plaintiff has not alleged or offered evidence showing that Harrah's used "false, deceptive or misleading representations or means" in attempting to recoup the $100 it overpaid to Plaintiff, or that Harrah's communicated or threatened to communicate Plaintiff's credit information, which is known to be false.  In addition, the $100 overpayment does not constitute a "debt" as defined by the FCEUA.  Section 2270.3 defines debt as:

> An actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer to pay money, arising out of single account as a result of a *purchase, lease or loan of goods, services or real or personal property for personal, family or household purposes or as a result of a loan of money or extension of credit* which is obtained primarily for personal, family or household purposes or as a result of a loan of money or extension of credit which is obtained primarily for persona, family, or household purposes, provided, however, that

19

money which is owed or alleged to be owed as a result of a loan secured by a purchase money mortgage on real estate shall not be included within the definition of debt . . . .

73 Pa. Cons. Stat. § 2270.3 (emphasis added).  Clearly, the overpayment here does not fit within the definition of "debt" in the FCEUC.  Summary judgment will be entered in favor of Harrah's on Plaintiff's FCEUA claim.

> 3.    *Conspiracy Claim*

Plaintiff argues that Defendants have "admitted that they had an ongoing symbiotic relationship" and that "Defendants had a pre-arranged plan and worked together towards obtaining $100 from Plaintiff."  (Pl.'s Resp. 15.)

Under Pennsylvania law, a claim for civil conspiracy requires proof of the following elements:  "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."  *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).  For the same reasons that we determined that Harrah's is not deemed a state actor, we find that Plaintiff has failed to establish there was a conspiracy between Harrah's and the Pennsylvania State Police.  *See Supra* Section III.A.2.  Specifically, Plaintiff has failed to put forth evidence showing that Harrah's and the Pennsylvania State Police acted with a common purpose to violate Plaintiff's constitutional rights.  Plaintiff merely asserts legal conclusions without evidentiary support.   This is not sufficient at the summary judgment stage.  Plaintiff does not provide any details about the alleged collusion between the police and Harrah's.  He submits no evidence about meetings, conversations, or acts that possibly support a finding that they acted with a common purpose to violate Plaintiff's constitutional rights.  Accordingly, Harrah's motion for summary judgment on the conspiracy claim will be granted.

4.      *False Arrest and Wrongful Seizure*

Plaintiff asserts claims for false arrest and wrongful seizure against Harrah's under Section 1983 and under state law.  Plaintiff's claims under Section 1983 cannot stand because, as we have already determined, Plaintiff has not established that Harrah's is a state actor. Plaintiff's claims under state law similarly fail.[9]

"Under Pennsylvania law, a false arrest is defined as '(1) an arrest made without probable cause or (2) an arrest made by a person without privilege to do so.'"  *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 572 (E.D. Pa. 2005) (quoting *McGriff v. Vidovich*, 699 A.2d 797, 799 n.3 (Pa. Commw. Ct. 1997)).  When there is no formal arrest, as was the case here, Plaintiff must show a "restraint on freedom of movement of the degree associated with a formal arrest." *Colbert*, 169 F. Supp. 2d at 359 (citation omitted).  We presume that Plaintiff is basing his claim on the facts surrounding Donatelli's conversation with Plaintiff where she informed Plaintiff that video surveillance showed the overpayment.  Plaintiff was not arrested.  Moreover, the record facts do not support a finding that the two-to-three minute conversation that Plaintiff had with Donatelli constituted a restraint on freedom.  Although Donatelli told Plaintiff to stay where he was while she called for the police officers, Plaintiff did not comply with Donatelli's instruction, and he returned to the poker table.  The record simply does not show that Plaintiff was seized by Donatelli or by any other Harrah's employee.  *See James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (stating that "the Supreme Court has repeatedly rejected the notion that a seizure occurs when an officer approaches a citizen to ask questions or make

---

[9] We note that Plaintiff failed to respond to Harrah's arguments in support of dismissal of the false arrest and wrongful seizure claims.  We presume Plaintiff has abandoned these claims. However, even analyzing the merits of these claims, we agree with Harrah's that summary judgment is appropriate.

requests.").  Accordingly, Harrah's Motion for Summary Judgment as to Plaintiff's false arrest

and wrongful seizure claims will be granted.

### 5.    Claim for Negligence/Negligent Supervision

Finally, Plaintiff asserts claims for negligence and negligent supervision against Harrah's.

To establish negligence under Pennsylvania law, Plaintiff must establish the following elements:

"(1) the existence of a duty or obligation recognized by law; (2) a failure on the part of the

defendant to conform to that duty, or a breach thereof; (3) a causal connection between the

defendant's breach and the resulting injury; and, (4) actual loss or damage suffered by the

complainant."  *Rabutino v. Freedom State Realty Co*., 809 A.2d 933, 938 (Pa. Super. Ct. 2002).

To establish negligent supervision under Pennsylvania law, Plaintiff must show "that his loss

resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an

employee acting outside the scope of his employment, (2) that is committed on the employer's

premises, (3) when the employer knows or has reason to know of the necessity and ability to

control the employee."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3d Cir. 2013).

As to the third prong, "an employer knows or should know, of the need to control an employee if

the employer knows that the employee has dangerous propensities that might cause harm to a

third party."  *Id*. (citations omitted).

The Amended Complaint merely asserts the standard for these torts, and provides no

factual allegations.  In his Response and Sur-Reply, Plaintiff contends that "Harrah's has a duty

not to use illegal mechanisms to collect debts," (Pl.'s Resp. 15), that "Harrah's employees acted

outside the scope of their employment," which was "foreseeable," and that "Defendants admitted

that the actions taken in this case are regular practice at the casino" (Pl.'s Sur-Reply 5.)  Plainly,

this is insufficient.  The evidence shows that Plaintiff was overpaid $100, and that his refusal to

return the money, even after having been on notice of the overpayment, established probable cause to arrest him for theft.  There is no evidence that Harrah's breached a duty owed to Plaintiff, nor is there any evidence that actual loss or damages resulted from such a breach.

## IV.     CONCLUSION

For the reasons discussed above, the Commonwealth Defendants' Motion for Summary Judgment will be granted, and the Motion for Summary Judgment by Defendant Chester Downs and Marina, LLC d/b/a Harrah's Philadelphia will be granted.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

23